**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 16-cv-10794 |
| v. | ) ) | Judge Andrea R. Wood |
| HENCH CONTROL CORPORATION, et al., | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case concerns an insurance coverage dispute over whether Plaintiff Hartford Casualty

Insurance Company ("Hartford") has a duty to defend, indemnify, or pay judgments against

Defendants Hench Control Corporation ("Hench I"), Hench Control, Inc. ("Hench II"), and

Caesar-Verona, Inc. ("Caesar-Verona") (collectively, "Hench")[1] in connection with a breach of

contract lawsuit filed by Defendant Dual-Temp of Illinois ("Dual-Temp"). Dual-Temp had

contracted to build a refrigeration system for a customer. As part of that project, Dual-Temp hired

Hench to design and provide a refrigeration control system ("RCS"), a piece of equipment that

controls temperature. However, Dual-Temp subsequently had to hire a third party to repair the

RCS provided by Hench because the RCS did not work properly. Dual-Temp then sued Hench for

breach of contract ("2009 case") and prevailed after a bench trial. In the instant lawsuit, Hartford

seeks a declaratory judgment that it is not obligated to defend or indemnify Hench, nor is it

required to pay Dual-Temp's award, with respect to the 2009 case. Before the Court are the

---

[1] On February 28, 2007, Caesar-Verona acquired Hench I through a sale of assets and thereafter began doing business as Hench II. *See Dual-Temp of Ill., Inc. v. Hench Control Corp.*, No. 09-cv-595, 2014 WL 4912723, at *2 (N.D. Ill. Sept. 30, 2014).

parties' cross-motions for summary judgment. (Dkt. Nos. 41, 44.)[2] For the reasons set forth below, the Court grants Hartford's motion and denies Dual-Temp's motion.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

### *The Policies*

Hartford and Hench I entered into a liability insurance agreement, policy number 57 SBN LP1764, which was effective March 31, 2006 through March 1, 2007 ("Hench I Policy"). (Pl.'s Corrected R. 56.1(a)(3) Stmt. of Mat. Facts in Support of its Mot. for Summ. J. ("PSMF") ¶ 42, Dkt. No. 43.)[3] After Caesar-Verona purchased Hench I's assets and began doing business under the Hench name, Hartford issued a separate liability insurance policy numbered 57 SBA RH8556 to "Caesar-Verona Inc. DBA Hench Control, Inc," which was effective March 31, 2007 through April 8, 2010 ("Caesar-Verona Policy," together with the Hench I Policy, the "Policies"). (*Id.* ¶ 43.) The Policies provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies," but only if the injury or damage "is caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period."

---

[2] Hartford voluntarily dismissed Hench II and Caesar-Verona from the present lawsuit after both agreed that Hartford has no duties with respect to the 2009 case. (Dkt. No. 15.) Hartford moved for entry of default against Hench I, which the Court took under advisement. (Dkt. No. 16.)

[3] Local Rule 56.1 requires a party seeking summary judgment to file with its motion a statement of material facts as to which the moving party contends there is not genuine issue and that entitle that party to judgment as a matter of law. L.R. 56.1(a)(3). Hartford has done so here. Local Rule 56.1 further requires the party opposing summary judgment to file a "concise response to the movant's statement." L.R. 56.1(b)(3). The response should respond to each numbered paragraph in the moving party's statement and where the opposing party disputes a fact, it must include specific references to the parts of the record or other supporting materials relied on to controvert the fact. Dual-Temp has not responded to Hartford's statement of material facts. Therefore, the Court deems Hartford's facts admitted where supported by the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 714–15 (N.D. Ill. 2012).

(*Id.* ¶ 44(A).) An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* ¶ 44(G)(16).)

Each of the Policies also contain an Exclusions section that limits the scope of coverage. For example, the Policies expressly exclude damages stemming from "Contractual Liability," which is defined as injuries or damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (*Id.* ¶ 44(B)(1)(b).) The Exclusions section also provides that the policy does not apply where the claimed property damage is "any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," or where the damage is incurred by "'your product.'" (*Id.* ¶ 44(B)(1)(k).) Furthermore, the Exclusions section includes "Damage To Impaired Property Or Property Not Physically Injured," which is defined as "[a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (*Id.* ¶ 44(B)(1)(n).) Finally, the Exclusions section withholds coverage for the "Recall Of Products, Work Or Impaired Property":

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
>
> (2) "Your work"; or
>
> (3) "Impaired property["];
>
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(*Id.* ¶ 44(B)(1)(o).)

### *The RCS for Home Run Inn*

In 2006, Dual-Temp entered into a contract to design and build the refrigeration system for Home Run Inn. (Pl.'s Resp. to Def. Dual-Temp of Illinois, Inc.'s R. 56.1(a)(3) Stmt. of Mat. Facts in support of its Mot. for Summ. J. ("PRSMF") ¶ 5, Dkt. No. 55.) As part of that system, Dual-Temp provided an RCS. (*Id.* ¶ 6.) An RCS is a system that controls room temperatures and related equipment in the production line, including compressors, condensers, and evaporators. (*Id.* ¶ 8.) It consists of electric panels connected to sensors in rooms throughout the production line, which allows the RCS to monitor and collect data on the temperature, humidity, and ammonia levels in each room. (*Id.* ¶ 9.) The electrical panels then communicate that data to a computer, which allows monitoring by personnel. (PSMF ¶ 14.)

In October 2006, Dual-Temp hired Hench to design and provide the RCS for Home Run Inn's system. (*Id.* ¶ 7.) On March 30, 2007, Hench delivered the RCS to Dual-Temp. (PRSMF ¶ 11.) But approximately one month after installation, the RCS began experiencing performance issues. (*Id.* ¶ 13.) The RCS failed to communicate the collected data and alert personnel regarding the refrigeration system's issues. (PSMF ¶ 19.) Despite attempts to fix the RCS, the communication issues continued regularly. (*Id.* ¶ 21.) As a result, in June 2008, Dual-Temp hired another company, Selective Technologies, to repair the RCS. (*Id.* ¶¶ 22.) Selective Technologies replaced some parts of the RCS, such as the electric panels and temperature sensors, and reused other parts. (*Id.* ¶ 23.) After Selective Technologies intervened, the RCS did not experience any further issues. (*Id.* ¶ 25.) Ultimately, Dual-Temp paid Selective Technologies $113,500 for its work on the RCS. (*Id.* ¶ 24.) In addition to the repair costs, Dual-Temp claims that the RCS's issues also caused $800 in property damage to Home Run Inn's products. (PRSMF ¶ 14.)

4

### *The 2009 Case*

On January 30, 2009, Dual-Temp filed a complaint against Hench in this District, alleging breach of contract. (PSMF ¶ 27.) From January 7 to January 10, 2014, the district court held a bench trial on Dual-Temp's claims. (*Id.* ¶ 29.) On September 30, 2014, the district court ruled in favor of Dual-Temp and against Hench, finding Hench liable for breach of contract. (*Id.* ¶ 31); *Dual-Temp of Ill., Inc. v. Hench Control Corp.*, No. 09-cv-595, 2014 WL 4912723, at *6 (N.D. Ill. Sept. 30, 2014). Specifically, the district court observed that Hench and Dual-Temp's contract stated that "[i]n the event that [Hench]'s goods, materials, equipment, labor or work does not meet the . . . requirements, [Hench] shall immediately, upon notice, replace or repair same or remedy any deficiency without expense to [Dual-Temp]," and thus the district court concluded that the RCS "never met Dual[-]Temp's ( . . . or Home Run Inn's) requirements." *Dual-Temp of Ill., Inc.*, 2014 WL 4912723, at *6. The district court ultimately awarded Dual-Temp $113,500 (the cost of paying Selective Technologies to repair the RCS), as well as interest and attorneys' fees.[4] *Id.* at *7.

Hench then unsuccessfully appealed the district court's determination to the United States Court of Appeal for the Seventh Circuit. (PSMF ¶ 33); *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 871 (7th Cir. 2016). In its opinion affirming the district court's ruling, the Seventh Circuit rejected Hench's argument that external factors unrelated to Hench's product or work—such as a power surge—caused the RCS's communication failures, and instead found that "there is sufficient circumstantial evidence for a reasonable factfinder to conclude that the communication failures were caused by a defect in the Hench RCS." *Dual-Temp of Ill., Inc.*, 821

---

[4] On June 30, 2014, the district court issued supplemental orders specifying that Dual-Temp could recover $36,641 in prejudgment interest and $20,591 in costs. (PSMF ¶ 32.) Then, on August 17, 2016, the district court awarded $614,711 in attorneys' fees to Dual-Temp. (*Id.* ¶ 34.)

F.3d at 870. Subsequently, on November 22, 2016, Hartford initiated the present lawsuit seeking a declaration that it owes no coverage to Hench and Dual-Temp for the judgments entered against Hench in the 2009 case.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be denied if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. When cross-motions for summary judgment are filed, inferences are drawn in favor of the party against whom the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted).

This Court exercises its diversity jurisdiction in this case. *See* 28 U.S.C. § 1332.[5] "Questions of insurance-policy interpretation are substantive," *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015), and "[a] federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits," *Land v. Yamaha Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). The parties here agree that Illinois law controls the construction and application of the Policies' terms. In Illinois, the interpretation of an insurance

---

[5] Hartford is incorporated in Indiana and has its principal place of business in Connecticut. Dual-Temp is an Illinois corporation with its principal place of business in Illinois. Hench I was a California corporation with its principal place of business in Illinois. Hench II is also a California corporation with its principal place of business in California. (PSMF ¶¶ 1–5.)

policy is a question of law appropriately resolved at the summary judgment stage. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998).

As a preliminary matter, Dual-Temp contends that Hartford paid Hench's legal costs in the 2009 case and the subsequent Seventh Circuit appeal and thus cannot now argue that it has no duty to indemnify. However, "decisions about an insurer's duty to indemni[f]y generally . . . follow a determination of the insured's underlying liability." *Atl. Cas. Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F. Supp. 3d 953, 961 (N.D. Ill. 2014) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)). An insurer that refuses to defend an insured against claims that "are even ***potentially within the scope of the policy***" is subsequently estopped from denying policy coverage in a later lawsuit by the insured or the insured's assignee. *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F.2d 818, 821–22 (7th Cir. 1981) (emphasis added) (explaining that a refusal to defend is "at the insurer's peril that it might later be found to have breached its duty to defend"). Accordingly, by defending Hench in the 2009 case, Hartford merely acknowledged that Dual-Temp's claims were potentially within the scope of the policy. The Court does not construe Hartford's previous payments as a concession regarding its actual duty to indemnify or pay any resulting judgments.

In a similar vein, Dual-Temp argues that Hartford is estopped from denying coverage with respect to the judgments in the 2009 case because Hartford refused to defend or indemnify Dual-Temp against Home Run Inn's breach of contract claims. According to Dual-Temp, it is an additional insured under the Hench I Policy. Dual-Temp asserts that it provided Hartford notice of Home Run Inn's claim, but Hartford secretly closed Dual-Temp's claim without fully investigating it. But even if Dual-Temp's allegations are true, the damages Dual-Temp seeks in this action do not stem from any claims brought by Home Run Inn. While Dual-Temp asserts that

Home Run Inn incurred $800 in property damage from the malfunctioning RCS, Dual-Temp does not offer any evidence that Home Run Inn filed a claim against it for that amount or that Dual-Temp paid that amount to Home Run Inn for breach of contract. *See Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 218 (Ill. 2004) ("[I]ndemnification is provided if the insured is ***obligated to pay damages*** by reason of a liability . . . ." (emphasis added)). Instead, what Dual-Temp seeks from Hartford is indemnification for the $13,500 it paid Selective Technologies because of ***Hench's*** breach of contract. Therefore, Hartford is not estopped from contesting coverage regarding Hench's liability in the 2009 case.

Turning now to the merits, at issue is whether Hartford is obligated pay the judgments awarded to Dual-Temp in the 2009 case. Hartford has a duty to indemnify "only if the damages stemming from the underlying claim that resulted in liability actually fall within the [Policies'] coverage." *Allied Prop. & Cas. Ins. Co. v. Metro N. Condo. Ass'n*, 850 F.3d 844, 847 (7th Cir. 2017). According to the district court's findings of fact and conclusions of law in the 2009 case, Hench owes damages to Dual-Temp for breaching the contract between them, which caused Dual-Temp to expend its own financial resources to remedy Hench's breach. Thus, Hartford is liable only if such damages are covered by the Policies.

This Court finds that the damages sought by Dual-Temp are specifically excluded by several provisions in the Policies' Exclusions section. First, the Policies exclude coverage for contractual liability, meaning circumstances in which "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (PSMF ¶ 44(B)(1)(b).) The Policies also exclude coverage for "[a] delay or failure by [Hench] or anyone acting on [Hench's] behalf to perform a contract or agreement in accordance with its terms." (*Id.* ¶ 44(B)(1)(n).) In the 2009 case, the district court expressly found that "the clear and unambiguous terms of the contract

8

itself [required Hench] to supply a system 'to meet requirements of plan and specifications' and also guaranteed that [Hench's] work would 'produce capacities or meet design specifications and functions,'" and furthermore that Hench's RCS "did not meet the requirements, and as such, defendants were required to replace, repair or remedy any deficiency without expense to Dual[-]Temp." *Dual-Temp of Ill., Inc.*, 2014 WL 4912723, at *6. In other words, the district court concluded that Hench owed Dual-Temp damages because it promised in the contract that the RCS would perform a certain way, and its failure to fulfill that promise constituted a breach. And the district court's damages award reflects only the cost of making the RCS perform as promised, as Hench had assumed responsibility for that task in the contract. *Id.* at *7. Therefore, the Policies' Exclusions section provides that coverage does not extend to the judgment in the 2009 case.

Similarly, the Exclusions section provides that the Policies do not apply to damages incurred due to Hench's own defective products. For example, one exclusion states that no coverage exists where the claimed property damage occurs because Hench's work was "incorrectly performed on it." (PSMF ¶ 44(B)(1)(k).) Furthermore, in the Recall Of Products, Work Or Impaired Property provision, Hartford expressly disclaims coverage for damages claimed for losses incurred by Hench or others for the repair or replacement of Hench's product, work, or impaired property due to a known or suspected defect. (*See* PSMF ¶ 44(B)(1)(o).) Moreover, after reviewing the record, the Seventh Circuit found "sufficient circumstantial evidence for a reasonable factfinder to conclude that the communication failures were caused by a ***defect*** in the Hench RCS." *See Dual-Temp of Ill., Inc.*, 821 F.3d at 871 (emphasis added). To the extent Dual-Temp sought damages based on Hench's provision of a defective RCS, such damages are clearly excluded from coverage under the Policies.[6]

---

[6] In the 2009 case, the district court does not appear to have expressly found that the RCS provided by Hench contained a defect. The issue facing that court was whether Hench breached its contract with Dual-

Furthermore, even if none of the Policies' exclusions applied, the damages sought by Dual-Temp still would not be covered. Under Illinois law, an insurance policy is a contract governed by the same rules of construction that apply to other types of contracts. *See Nicor, Inc. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 860 N.E.2d 280, 285 (Ill. 2006). If the words of a contract are clear and unambiguous, "a court must interpret the intent of the parties solely from the plain language of the contract." *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (Ill. App. Ct. 2002).

Here, the Court finds that the Policies' words are clear and unambiguous: Hartford only agreed to cover any injuries or damage caused by an "occurrence," which the Policies define as an "accident." The ordinary meaning of the word accident implies an event, circumstance, or incident that causes damage. *See Definition of Accident*, Merriam-Webster, https://www.merriam-webster.com/dictionary/accident ("[A]n unforeseen and unplanned event or circumstance . . . ."); *Definition of Accident*, Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/accident ("An unfortunate incident that happens unexpectedly and unintentionally, typically resulting in damage or injury."). Yet Dual-Temp has not identified any such event, circumstance, or incident that caused the RCS's issues. Rather, the record indicates that approximately one month after installation, the RCS unexpectedly began malfunctioning. (PSMF ¶ 13.) Moreover, Dual-Temp has previously taken the position that the RCS did not break down but rather never worked to begin with. *See Dual-Temp of Ill., Inc.*, 2014 WL 4912723, at *2 ("Dual[-]Temp asserts problems arose with the Hench system immediately

---

Temp, and the court did not need to resolve the disputed factual issue regarding the presence of a defect to conclude that a breach occurred. *See Dual-Temp of Ill., Inc.*, 2014 WL 4912723, at *6 ("Defendants insist that Dual[-]Temp must prove that the communication losses were a product or result of a defect in the Hench system. However, this position overlooks the clear and unambiguous terms of the contract itself . . . ."). But as indicated above, after reviewing the record, the Seventh Circuit found adequate evidence that the RCS was defective.

upon installation, continued past start-up and that the system never properly worked at the Home Run Inn facility.").

Dual-Temp cites several cases in which courts outside this Circuit have found that the installation of a defective product into a larger system qualifies as an "occurrence." But all of Dual-Temp's cited cases are factually distinguishable because the incorporation of the defective product caused irreparable damage to a larger product, such as mixing impure juice concentrate into a drink, *Chubb Ins. Co. of N.J. v. Hartford Fire Ins. Co.*, No. 97 CIV 6935 LAP, 1999 WL 760206, at *4 (S.D.N.Y. Sept. 27, 1999), adding wood splinters to a cereal, *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 93 Cal. Rptr. 2d 364, 374 (Cal. Ct. App. 2000), or installing asbestos into a building, *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 624–27 (2d Cir. 1993). Accordingly, a reasonable jury could have found that under those circumstances, the installation or incorporation itself constituted an unforeseen and unplanned event, circumstance, or incident that caused damage. By contrast, Selective Technologies was able to repair the RCS fully by replacing some of its parts; there was no need to uninstall or even alter the rest of the refrigeration system. (PSMF ¶¶ 23, 25.) Ultimately, this Court finds that Hench's installation of a non-performing RCS does not qualify as an accident. *See Cont'l X-Ray Corp. v. Home Indem. Co.*, No. 96 C 5250, 1997 WL 102537, at *4 (N.D. Ill. Mar. 5, 1997)[7] ("An accident by its nature contemplates events that are unforeseen and unexpected. Inadequate product performance is foreseeable and falls within the realm of expected circumstances."). Therefore,

---

[7] In *Continental X-Ray Corp. v. Home Indemnity Co.*, the court interpreted an insurance policy with identical language as here: the policy covered only property damage that stemmed from an "occurrence," which it defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." 1997 WL 102537, at *3. The court concluded that the policy did not cover the insured's liability to one of its customers based on its defective installation of an X-Ray Suite. *Id.* at *6.

Dual-Temp's claimed damages were not caused by an occurrence and are accordingly not covered by the Policies.

The Court's conclusion in this respect is consistent with the general principle that general liability policies usually do not cover the cost of repairing the insured's defective work or products. *See Allied Prop. & Cas. Ins. Co.*, 850 F.3d at 847–48 (summarizing cases); *Pekin v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 365 (Ill. App. Ct. 1997) (holding that general liability policies are "not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses"). As an example, in *Allied Property & Casualty Insurance Company v. Metro North Condominium Association*, the Seventh Circuit applied this principle to a lawsuit with nearly identical facts to those at hand. 850 F.3d at 847. There, the insured, a window company, settled an unhappy customer's claim after defective windows caused the customer's building to sustain significant water damage. *Id.* at 846. The insurer then sought a declaration that it was not required to cover the losses claimed in the settlement. *Id.* The Seventh Circuit held that the insurer indeed had no duty to indemnify, basing its decision in part on Illinois courts' consistent refusal to find general liability coverage in similar situations. *Id.* at 848–49. The court also recognized that the policy excluded damages based on contractual liability and "your [defective] work," two exclusions that are similarly present in the Policies in this case. *Id.* at 847–48. Similarly, this Court concludes that the Policies, which the parties do not dispute are general liability policies, do not require Hartford to pay the judgments arising from the 2009 case.

## CONCLUSION

For the foregoing reasons, Hartford's motion for summary judgment (Dkt. No. 41) is granted, and Dual-Temp's motion for summary judgment (Dkt. No. 44) is denied. The Court finds

that Hartford has no duty to defend, indemnify, or otherwise pay judgments arising out of the breach of contract case filed by Dual-Temp against Hench. The Clerk will be directed to enter Judgment in favor of Hartford.

ENTERED:

Dated: September 12, 2019

_____
Andrea R. Wood
United States District Judge